LEON DRAPEAU *vs.* INTERNATIONAL PAPER COMPANY.

Androscoggin.    Opinion March 18, 1902.

*Negligence.    Master and Servant.    Defective Machinery.*

1.  An inexperienced laborer is not held to assume the risk of perils which are not called to his attention and of which he has no knowledge, but of such only as he knows, or by the exercise of ordinary care ought to know.

2.  The plaintiff was directed by the assistant superintendent to take a position near the capstan on the left-hand side of a wire cable seven or eight feet from the mill, used in drawing logs from a large pile into the water, and communicate to the operator of the drum-winder the signals received from the man at the log pile. But all the power that could be applied proved insufficient to move the logs to which the cable had been attached, and there was evidence to justify the plaintiff's contention that at the last attempt the cable slipped off of the capstan, vibrated against the corner of the building, rebounded over the head of the plaintiff, and then swept back with resilient force against the plaintiff's left leg, causing a fracture of both bones below the knee.

3.  After a patient study of all the evidence in the case, it is the opinion of the court that the conclusion of the jury cannot be deemed unmistakably wrong in finding that such a capstan or winch-head, without an effectual guard to hold the cable in place, was not a reasonably suitable appliance to perform the work required under the circumstances existing at the time of the accident. It might reasonably have been anticipated by those in charge of the work, who had frequently seen the cable fly off from the capstan under similar conditions, and observed its tendency to vibrate to some extent after it left the capstan, that an accident would happen to the signalman either in the way it did happen or in some similar manner.

4.  *Held;* that there was sufficient evidence to support the conclusion which the jury probably reached, that the plaintiff had not performed any regular service as a signalman in connection with the working of this cable prior to the day of the accident; that his knowledge of the working of it prior to that time was only of that general and indefinite character which might be derived from the casual observation of a laborer who was not charged with any special duty in regard to it; and that he did not comprehend and fully appreciate the perils incident to the operation of it under the conditions existing at that time, but unhesitatingly assumed that no danger would be incurred in following the directions of his superior. Under these circumstances his conduct is entitled to be viewed in the light of reasonable charity, and he should not be deprived of the benefit of a verdict in his favor which is not shown to be clearly wrong.

Motion by defendant for new trial. Overruled.

Case for personal injuries to the plaintiff caused by a wire cable flying from the capstan on which it ran and breaking the plaintiff's leg below the knee.

The case is stated in the opinion.

*D. J. McGillicuddy and F. A. Morey*, for plaintiff.

*G. D. Bisbee and R. T. Parker*, for defendant.

Counsel argued, among other things, that the danger was one necessarily incident to the work or was caused by the carelessness of Martin, the plaintiff's fellow-servant, in hitching to a log too high on the pile or in trying to haul down the whole pile at once.

But the plaintiff has alleged that this place was dangerous because of the defective condition of the capstan. And he must prove his case as alleged. It is not enough for him if the case shows that the nature of the work necessarily rendered the place more or less dangerous under certain conditions.

"The declaration must contain all the allegations necessary to make out the plaintiff's case. In this state the general rules of pleading are simple and must be adhered to." *Bennett* v. *Davis*, 62 Maine, 544; *Shorey* v. *Chandler*, 80 Maine, 409; *Coolbroth* v. *Maine Central Railroad Co.*, 77 Maine, 165.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOG-LER, PEABODY, JJ.

WHITEHOUSE, J. In this case the plaintiff recovered a verdict of $510.19 for personal injuries sustained by him while in the employment of the defendant company at the Otis mill in Chisholm, and the case comes to this court on a motion to set this verdict aside as against the evidence.

In performing the work of drawing logs into the water from a large pile on the bank of the river, the defendant used a steel wire cable about three-fourths of an inch in diameter and 300 feet long. At the power end this cable was attached to a large spool or drum-winder set on the roof of the wood room about twelve feet above a platform that extended along the side of the paper mill close to the

bank of the river, a distance of about seventy feet. Over this platform and in line with it the wire cable was stretched from the drum-winder to the log pile, and was operated by water power. About half way down the platform the mill turns to the right at an angle of about 90 degrees, and at this point a capstan or winch-head was placed, about two feet above the platform, and so adjusted as to revolve upon a vertical shaft set in the platform as an axle. The purpose of this revolving capstan was to guide the cable around the corner of the mill and also to keep it in the middle of the drum-winder. The cable ran from the drum-winder on to the revolving capstan and thence bending to the right was drawn to the log pile 225 feet distant. But at the time of the accident the capstan was not only twelve feet lower than the drum-winder, but about the same distance lower than the wood pile, and there was no appliance to hold the cable on the capstan except a very narrow oblique flange around the top of it. Thus when the power was applied, and the strain exerted on the cable, both ends of which were high above the capstan, there was a constant tendency of the cable to fly off of the capstan. Its liability to fly off depended largely upon the angle at which the logs were drawn and the height of the logs above the capstan.

On the day of the accident the plaintiff was directed by the assistant superintendent to take a position near the capstan on the left-hand side of the cable, seven or eight feet from the mill, and communicate to the operator of the drum-winder the signals received from the man at the log pile. But all the power that could be applied proved insufficient to move the logs to which the cable had been attached, and there was evidence to justify the plaintiff's contention that at the last attempt the cable slipped off of the capstan, vibrated against the corner of the building, rebounded over the head of the plaintiff, and then swept back with resilient force against the plaintiff's left leg causing a fracture of both bones below the knee.

The plaintiff contended that the capstan, as then constructed, was unprovided with any sufficient guard or flange to prevent the cable from thus slipping off when in operation, and that it was an unsuitable and defective appliance to accomplish the purpose for which it was designed. On the other hand the defendant introduced evidence

tending to show that it was not practicable to devise any other mechanism to do the work required under the conditions existing at that time.

After a patient study of all the evidence in the case, it is the opinion of the court that the conclusion of the jury cannot be deemed unmistakably wrong in finding that such a capstan or winch-head, without an effectual guard to hold the cable in place, was not a reasonably suitable appliance to perform the work required under the circumstances existing at the time of the accident. It might reasonably have been anticipated by those in charge of the work, who had frequently seen the cable fly off of the capstan under similar conditions, and observed its tendency to vibrate to some extent after it left the capstan, that an accident would happen to the signalman either in the way it did happen or in some similar manner. The able and plausible argument of counsel for the defense against the probability that the slipping of the cable from the capstan would have been followed by such a strong vibratory motion of the wire as to cause the accident in the manner claimed by the plaintiff, is outweighed in the minds of the court by the verdict of the jury and the uncontroverted fact that the accident was caused in some way by the vibration of the cable.

But it is further contended, in behalf of the defense, that the danger incident to the duties of a signalman stationed on the platform near the capstan and the cable, were as well known to the plaintiff as to the defendant, and that in any event he must be deemed to have assumed all risks involved in that service.

The principles of law applicable to this branch of the case have been so fully considered and critically distinguished in the recent decisions of this court that any extended discussion of them in connection with this motion for a new trial as against evidence must be deemed superfluous. It is undoubtedly well settled law that if a laborer continues in the service of his employer after he has knowledge of the defective or unsuitable condition of any mechanical appliance in connection with which he is required to labor, and it appears that he fully comprehends and appreciates the nature and extent of the danger to which he is thereby exposed, he will be deemed to have

waived a strict performance of the employer's obligation to furnish safe and suitable appliances, and to have voluntarily assumed all risks incident to service performed under such circumstances. *Mundle* v. *Hill Mfg. Co.*, 86 Maine, 400; *Conley* v. *Am. Express Co.*, 87 Maine, 352; *Cunningham* v. *Bath Iron Works*, 92 Maine, 501; *Jones* v. *Manufacturing and Investment Co.*, 92 Maine, 565, 69 Am. St. Rep. 535. But a general knowledge of the existence of some danger which is not fully appreciated is not conclusive evidence that the risk is assumed. *Frye* v. *Bath Gas and Electric Co.*, 94 Maine, 17. The inexperienced laborer is not held to assume the risk of perils which are not called to his attention and of which he has no knowledge, but of such only as he knows, or by the exercise of ordinary care ought to know. *Campbell* v. *Eveleth*, 83 Maine, 50; *Sawyer* v. *Rumford Falls Paper Co.*, 90 Maine, 354; *Dempsey* v. *Sawyer*, 95 Maine, 295.

The plaintiff had been in the employment of the defendant company at the Otis mill for nearly four years, and for a little more than a year had worked in the "wood room" from one door of which there was an unobstructed view of the capstan and cable; but with respect to his actual observation of the working of the cable, and the extent of his experience as a signalman, prior to the day of the accident, and whether any warning was ever given him respecting the danger of that service, the testimony was sharply conflicting. The plaintiff stoutly maintained that he had never performed any service as a signalman, or any duty whatever in connection with the use of this cable to draw logs from the pile into the river, prior to the day of the accident; and there were some facts and circumstances corroborating his testimony upon this point. He also insisted that he had never seen the cable fly off of the capstan under any circumstances prior to the special instance when the accident occurred, and that nothing was ever said to him about the danger of the work. On the day of the accident he was assigned to duty as a signalman between nine and ten o'clock in the forenoon, and the accident occurred about two o'clock in the afternoon. The position he was to occupy in relation to the cable and capstan, was specified and pointed out to him by the assistant superintendent, and it was

not in controversy that he stood precisely where he was directed to stand for the purpose of giving the signals.   After examining and comparing the testimony of the several witnesses on this branch of the case, it is the opinion of the court that there was sufficient evidence to support the conclusion which the jury probably reached, that the plaintiff had not performed any regular service as a signalman in connection with the working of this cable prior to the day of the accident; that his knowledge of the working of it prior to that time was only of that general and indefinite character which might be derived from the casual observation of a laborer who was not charged with any special duty in regard to it, and that he did not comprehend and fully appreciate the perils incident to the operation of it under the conditions existing at that time, but unhesitatingly assumed that no danger would be incurred in following the directions of his superior.   Under these circumstances his conduct is entitled to be viewed in the light of reasonable charity, and he should not be deprived of the benefit of a verdict in his favor which is not shown to be clearly wrong.

*Motion overruled.*
*Judgment on the verdict.*